UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| COURTNEY EALY, )<br>   Plaintiff, )<br> )<br>vs. )<br> )<br>CAMERON WATSON, et. al., )<br>   Defendants. ) | Case No. 20-3027 |

SUMMARY JUDGMENT ORDER

JAMES E. SHADID, U.S. District Judge:

This cause is before the Court for consideration of Defendants Cameron Watson, David Frank, and Angela McKittrick's Motion for Summary Judgment. [58]. For the following reasons, the motion is GRANTED. [58].

I. BACKGROUND

Plaintiff, a *pro se* prisoner, has one claim alleging Defendants Warden Cameron Watson, Adjustment Committee Chairman David Frank, and Committee Member Angela McKittrick violated his Fourteenth Amendment due process rights during a September 12, 2019, disciplinary hearing at Western Illinois Correctional Center. *See* November 10, 2020 Case Management Order; May 4, 2021 Text Order; June 23, 2021 Minute Entry. Plaintiff claims he was placed in disciplinary segregation for five months where he experienced unsanitary living conditions.

II. FACTS

Plaintiff was incarcerated at Western Illinois Correctional Center (Western) when he received a disciplinary ticket on September 4, 2019. (Plain. Resp., [61], Ex. Q). The

1

Offender Disciplinary Report claimed multiple offenders located on one wing in the facility had tested positive "for the use of THC." (Plain. Resp., [61], Ex. Q). The reporting officer stated he had conducted interviews with three confidential sources (CS) who claimed Plaintiff had marijuana and provided it to inmates on the wing including one CS. The CS witnesses also said Plaintiff was getting the marijuana from a female visitor, T.B., who hid it "inside her vagina" and provided it to Plaintiff during visiting hours. (Plain. Resp., [61], Ex. Q).

The report further claimed officers monitored a phone call in which Plaintiff used another inmate's PIN number to call T. B. (Plain. Resp., [61], Ex. Q). During the call, Plaintiff told T.B. to "[m]ake sure you got that shit" when she came to visit. (Plain. Resp., [61], Ex. Q).

The reporting officer stated records demonstrated T.B. visited on multiple occasions, but officers specifically reviewed visiting room footage from an August 11, 2019 visit. (Plain. Resp., [61], Ex. Q). The officer claimed T. B. could be seen retrieving an item from her crotch and placing it on the table underneath a napkin and candy. (Plain. Resp., [61], Ex. Q). The officer further claimed Plaintiff was then seen putting the item in his mouth. (Plain. Resp., [61], Ex. Q).

The reporting officer stated Plaintiff was uncooperative during an interview and denied any involvement. (Plain. Resp., [61], Ex. Q).

Plaintiff was accused of violating three department rules including Drugs and Drug Paraphernalia for bringing marijuana into the facility, Possession or Solicitation of Unauthorized Personal Information for using another inmate's phone PIN, and Abuse

of Privileges based on conduct during a visit or phone call. (Plain. Resp., [61], Ex. A, Q). The Offender Disciplinary Report states Plaintiff was accused of a major infraction, he would be placed in "temporary confinement" due to the "seriousness of the offense," and a hearing was required. (Plain. Resp., [61], Ex. Q).

An officer indicated he had delivered a copy of the Offender Disciplinary Report to the Plaintiff on September 4, 2019, but Plaintiff refused to sign it. (Plain. Resp., [61], Ex. Q). Plaintiff admits he did receive a copy of the report. (Def. Mot., [58], Ex. 1; Plain. Depo., p. 9).

The bottom portion of this document states: "Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing." The form has spaces designated for the inmate's potential witnesses as well as what information each witness could provide. (Plain. Resp., [61], Ex. Q).

Plaintiff admits he did not submit this form. (Def. Mot., [58], Plain. Depo., p. 10).

> I may not have submitted the slip at the bottom, but I might also have wrote it on a piece of paper, like ripped off a piece of paper, wrote my name and ID number on it and wrote a request to the Adjustment Committee and dropped it....well, I was actually in segregation, so I couldn't drop it in a box. I would have to put it in the door and the CO would have to come get it. (Def. Mot., [58], Plain. Depo, p. 10).

Plaintiff does not remember when he would have submitted this paper. (Def. Mot., [58], p. 10).

Plaintiff did file a grievance which was received on September 5, 2019. (Plain. Resp., [61], Ex. N). Plaintiff disputes the statements of each CS noting there is no video of their claims, no specific time frames provided, and no other "physical evidence" to

support their statements. (Plain. Resp., [61], Ex. N, p. 2). Plaintiff concludes his grievance stating he "wished that the board look into this and throw out the ticket." (Plain. Resp., [61], Ex. N, p. 2).

The grievance officer did not review the document until January 29, 2020, and ultimately denied Plaintiff's grievance. (Plain. Resp., [61], Ex. N). The Warden's Office also approved the denial on the same day. (Plain. Resp., [61], Ex. N).

An Adjustment Committee Hearing was held on September 12, 2019. (Def. Mot.,[58], IDOC # 89); (Plain. Resp., [61], Ex. A). Defendants Frank and McKittrick served on the committee and signed the Adjustment Committee Final Report. (Def. Mot.,[58], IDOC # 90); (Plain. Resp., [61], Ex. A).

The report states Plaintiff admitted to using another inmate's personal PIN number and abuse of privileges, but he denied the Drugs and Drug Paraphernalia violation. (Def. Mot.,[58], IDOC # 89). Plaintiff stated his phone call with T.B. was about a debit card, not drugs, and he did not bring drugs into the facility. (Def. Mot., [58], IDOC # 89).

The Adjustment Committee Report then reviewed the evidence including multiple offenders on Plaintiff's wing testing positive for THC, the statements of each CS, the phone call with T.B., and the visiting room footage. (Def. Mot.,[58], IDOC # 89). Defendant Frank says prior to the hearing, the Adjustment Committee watched the video recording and spoke with the Internal Affairs Officer who conducted the investigation and wrote the disciplinary report. (Def. Mot., [58], Frank Aff., p. 1). The officer reviewed the CS statements and stated he believed they were "reliable due to

4

corroborating statements made during separate interviews." (Def. Mot., [58], Frank Aff., p. 2).

The Final Adjustment Committee Report provided the basis for the final decision noting the CS statements, the video recording, and the other information provided in the investigator's reports. (Def. Mot., [58], IDOC #89). Plaintiff was found guilty of bringing marijuana into Western Illinois Correctional Center. (Def. Mot.,[58], IDOC # 89). The committee also noted it would not release the identities of the three CS witnesses for safety and security reasons. (Def. Mot.,[58], IDOC # 89).

Plaintiff says he was given an opportunity to speak during the disciplinary hearing. (Def. Mot., [58], Ex. 1; Plain. Depo., p. 11-12). Plaintiff says he asked for his drug test results and he asked for a continuance to view the video recording. (Def. Mot., [58], Ex. 1; Plain. Depo., p. 14). Plaintiff also told the Adjustment Committee he had "sent a grievance asking for them to look into the confidential sources' statements don't corroborate each other." (Def. Mot., [58], Ex. 1; Plain. Depo., p. 14).

The hearing proceeded and Plaintiff was found guilty of all three rule violations and Defendants Frank and McKittrick recommended six months of C grade status, five months of segregation, a disciplinary transfer, and a six-month restriction on contact visits. (Plain. Resp., [61], Ex. A). Defendant Warden Watson concurred with the decision and discipline on September 16, 2019. (Plain. Resp., [61], Ex. A).

An officer signed the bottom of the Adjustment Committee Final Report indicating he provided a copy of it to the Plaintiff on September 24, 2019, at 2:30 p.m.

(Plain. Resp., [61], Ex. A). Plaintiff admits he received the report. (Def. Mot., [58], Ex. 1; Plain. Depo., p. 15).

Defendant Frank does not remember Plaintiff asking for witnesses during the hearing, and there is no record of Plaintiff requesting witnesses either before or during the hearing. (Def. Mot., [58], Frank Aff., p. 2). "If Plaintiff had requested witnesses, the witnesses who could provide relevant testimony could have been called and interviewed by the hearing investigator, and it would be documented in the Adjustment Committee Report." (Def. Mot., [58], Frank Aff., p. 2).

Defendant Frank also does not remember Plaintiff asking for his drug test results during the hearing and the record does not verify Plaintiff's request. (Def. Mot.,[58], Frank Aff., p. 2). "However, a drug test would have little bearing on this case, as Plaintiff was found guilty of introducing contraband into the facility and not of using that contraband." (Def. Mot., [58], Frank Aff., p. 2).

Defendants' maintain Plaintiff's first month in segregation was in "investigative segregation" prior to any finding of guilt. (Def. Mot., [58], p. 2). It appears from the housing document provided that Plaintiff was placed in investigative segregation on August 26, 2019. (Def. Mot., [58], Ex 1).

Plaintiff says he was moved to crisis watch at some point after the disciplinary hearing on September 12, 2019, and before his transfer to Lawrence Correctional Center on October 23, 2019. (Def. Mot., [58], Ex. 1; Plain. Depo., p. 20). Plaintiff does not recall how long he remained on crisis watch. (Def. Mot., [58], Plain. Depo., p. 20).

6

While still at Western, Plaintiff says all segregation cells were very cold. (Def. Mot., [58], Plain. Depo., p. 19). Once particular cell was filthy and had bad plumbing and spider webs. (Def. Mot., [58], Plain. Depo., p. 19). Plaintiff says there was feces from other cells coming into his toilet. (Def. Mot., [58], Plain. Depo., p. 19).

Plaintiff was transferred to Lawrence Correctional Center (Lawrence) on October 23, 2019 where he remained in segregation until the end of January, 2020. (Def. Mot., [58], Ex. 1; Plain. Depo., p. 21). Plaintiff was then moved to general population at Lawrence. (Def. Mot., [58], Ex. 1; Plain. Depo., p. 21).

Plaintiff says the only difference in the segregation cells and general population cells at Lawrence is the segregation cells are "filthier because it's like nobody really comes to like clean them out." (Def. Mot., [58], Ex. 1; Plain. Depo., p. 22). Plaintiff also claims there were bird feces and feathers outside of his cell window. (Def. Mot., [58], Plain. Depo. p. 23), (Plain. Resp., [61], p. 2) Plaintiff admits he was able to clean the inside of his cell and open his window. (Def. Mot., [58], Ex. 1; Plain. Depo., p. 22-23).

Plaintiff says in segregation, he also had limited phone calls and limitations on commissary purchases. (Def. Mot., [58], Ex. 1; Plain. Depo., p. 24),

### III. LEGAL STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed.

7

R. Civ. P. 56(c)(1)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.; Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a §1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

IV. ANALYSIS

Defendants argue Plaintiff cannot demonstrate a violation of his constitutional rights. The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkerson v Austin*, 545 U.S. 209, 221 (2005). Therefore, before considering whether Plaintiff was given notice and a hearing prior to his placement in segregation, the Court must first consider whether Plaintiff had a liberty interest at stake.

The Seventh Circuit has noted "an inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff,* 734 F.3d 740, 743 (7th Cir. 2013), *citing Marion v. Columbia Corr. Inst.,* 559 F.3d 693, 697 (7th Cir.2009). A convicted prisoner must

be able to show his confinement imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

To determine whether Plaintiff's time in segregation rises to the level of a constitutional violation, the Court must consider "the combined import of the duration of the segregative confinement *and* the conditions endured." *Marion*, 559 F.3d at 697 (emphasis in original). Unless an inmate is housed in "exceptionally harsh conditions," relatively short terms of segregation will not violate a prisoner's due process rights. *Hardaway*, 734 F.3d at 743; *Marion*, 559 F.3d at 697–98.

Defendants maintain five months in segregation, standing alone is not enough to implicate a liberty interest. *See Hardaway*, 734 F.3d at 744 (finding total of six months in segregation "alone is insufficient to rise to the level of a Fourteenth Amendment violation."); *Marion*, 559 F.3d at 698 ("six months of segregation is not such an extreme term and, standing alone, would not trigger due process rights.").

The Court agrees the amount of time Plaintiff spent in segregation does not, by itself, indicate a potential due process violation. Therefore, the Court musts consider whether the conditions of Plaintiff's confinement were severe enough to implicate a liberty interest. *See Kervin v. Barnes*, 787 F.3d 833, 836–37 (7th Cir. 2015) (a period of segregation shorter than six months may establish a violation "depending on the conditions of confinement.").

The Supreme Court has noted it is difficult to articulate an appropriate baseline to measure what is atypical and significant in any particular prison. *Wilkerson*, 545 U.S.

at 223. "[M]ere exposure to unsavory conditions worse than those experienced in general population housing" generally will not suffice. *Stallings v. Best*, 2018 WL 4300488, at *6 (N.D.Ill. Sept. 10, 2018) *citing Hardaway*, 734 F.3d at 744; *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008). However, the Supreme Court held inmates "deprived of almost any environmental or sensory stimuli and of almost all human contact" for "an indefinite period" meets "any plausible baseline." *Wilkinson*, 545 U.S. at 214, 223.

When asked about the segregation conditions at Western, Plaintiff said all cells were cold, and one particular cell was dirty, had bad plumbing, bugs, and the smell of feces from the toilet. Plaintiff does not provide any additional information. For instance, Plaintiff does not state how long he was in the unclean cell, nor has he given any description of other cells beyond a vague statement that the were cold. In addition, Plaintiff transferred to another facility just one month after he was found guilty of the disciplinary ticket.

In his deposition, Plaintiff stated segregation cells at Lawrence were not as clean as general population cells. However, Plaintiff admits he could clean his cell. Plaintiff's allegation that his cell window was not clean does not demonstrate a significant hardship.

In response to the dispositive motion, Plaintiff now says due to the limitations on light at Lawrence Correctional Center, he "now has to wear prescription glasses with shade on them" (Plain. Resp., [61], p. 6; [68], p. 2; [69], p. 3). Plaintiff made no mention of any eye problems in his deposition. More important, Plaintiff has not presented any medical records or other evidence to substantiate this claim. The Court cannot rely on

10

Plaintiff's speculation concerning the cause of any claimed eye problems. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) ("our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture.")(internal citation omitted); *Hall-Bey v Hanks*, 93 Fed.Appx 977, 980 (7th Cir. 2004)("conclusory statements cannot sustain a non-movant's burden on summary judgment.").

Plaintiff's response also includes a general statement that the segregation cells made him "sick," and he the "loss of gym time, loss of yard, loss of phone, loss of grade," and loss of visitation had an impact on his mental health. (Plain. Resp., [68], p. 2).

Again, Plaintiff does not provide any specific information concerning his living conditions or how whether he had any opportunity to exercise. Plaintiff has also failed to provide any medical records or even a general description of how and when he became sick.

Finally, the Seventh Circuit has "already ruled that deprivations upon demotion to 'C' grade status do not implicate a liberty interest." *Miller v. Maue*, 759 Fed.Appx. 515, 516 (7th Cir. 2019), *citing Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005); *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (collecting cases).

Based on the record before the Court, Plaintiff cannot establish his five-month stay in segregation constituted an "atypical and significant hardship," and therefore he cannot establish a protected liberty interest was at stake. *Sandin*, 515 U.S. at 484; *see i.e.*

*Stallings v. Best*, 2018 WL 4300488, at *6 (N.D. Ill. Sept. 10, 2018*), aff'd*, 777 F. App'x 831 (7th Cir. 2019) (finding no liberty interest in six-month segregation stay despite "six-legged pests that invaded [plaintiff's] food trays and body and four-legged pests that skittered over him in the dark"); *Coleman v. Baldwin*, 2016 WL 537970, at *4 (N.D. Ill. Feb. 11, 2016)(stating that no constitutional concern arose when an inmate was held for six months in "the presence of insects, mice, and broken windows as well as a restriction on showers and the deprivation of his wheelchair and walking cane"); *Williams v. Sanders*, 2010 WL 4687840, at *2 (C.D. Ill. Nov. 4, 2010) ("[t]ransferring a prisoner from the general population to segregation unit" with "noisy, unsanitary cells" did "not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."); *Sanchez v. Walker*, 2010 WL 5313815, at *5 (N.D. Ill. Dec. 17, 2010)(six month segregation stay did not did not implicate a liberty interest despite the fact that the inmate had no access to cleaning supplies, trash was not removed, toilets were dirty and only periodically flushed, "little black bugs" were found around the toilet, and inmates were subjected to roaches, spiders, and mice.).

Even if Plaintiff had demonstrated a liberty interest was at stake, he cannot demonstrate his due process rights were violated during the September 12, 2019, Adjustment Committee hearing. "Due process requires that prisoners in disciplinary proceedings be given: '(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the factfinder of the

evidence relied on and the reasons for the disciplinary action.'" *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007), *quoting Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir. 1992).

"Challenges to the sufficiency of the evidence are governed by the 'some evidence' standard." *Boyd v. Warden*, 2023 WL 130534, at *2 (S.D.Ind.Jan. 9, 2023), *quoting Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016). In other words, "a hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("[t]he some evidence standard … is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

In addition, "[w]hen confidential information is the basis for a prison disciplinary decision, there must be some indication of the reliability of the confidential sources." *Gutierrez v. Baldwin*, 2022 WL 18027527, at *6 (S.D.Ill. Dec, 30, 2022), *citing Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985).

> The reliability of confidential informants may be established by: (1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee, *McCollum,* 695 F.2d at 1049; (2) corroborating testimony, (3) a statement on the record by the chairman of the disciplinary committee that, he had firsthand knowledge of the sources of information and considered them reliable on the basis of 'their past record of reliability, or (4) *in camera* review of material documenting the investigator's assessment of the credibility of the confidential informant.Mendoza, 779 F.2d at 1293 (internal citation and quotations omitted).

Defendants argue Plaintiff received his due process protections during the

disciplinary hearing. He was given advance written notice of the violation when he was provided with a copy of the Offender Disciplinary Report on September 4, 2019, eight days before the hearing.  Plaintiff was given an opportunity to be heard before an impartial decision maker when he appeared before the adjustment committee and was given the opportunity to call witnesses and present evidence.  The committee spoke with the investigating officer concerning the reliability of each CS statement.   The committee found the information provided by the CS witnesses was reliable since the statements were obtained independently and corroborated each other.  In addition, the drug test results of other inmates on Plaintiff's wing, Plaintiff's telephone call with T.B. using another inmate's PIN, and the video recording of his meeting with T.B. provided further support of the CS statements.  Finally, the Adjustment Committee Report provided an overview of all the evidence considered and the basis for its decision.

      Plaintiff argues the Adjustment Committee members failed to consider his grievance.  However, considering grievances is the job of the grievance counselor and grievance officer, not the Adjustment Committee.  Plaintiff believes he may have submitted a piece of paper questing the CS statements, but he does not remember when.   Plaintiff further admits he was given the proper form to request witness, but he did not use it, nor has he mentioned any witness he wished to call or could have provided relevant information.

      Even if the Adjustment Committee had considered Plaintiff's grievance, it does not provide any specific evidence.  Instead, Plaintiff simply says he does not believe the CS statements are detailed enough and he does not believe they corroborate each other.

Plaintiff's disagreement with the Adjustment Committee's findings is not evidence of a due process violation. *See Singh v. Gegare,* 651 Fed.Appx. 551, 555-56 (7th Cir. 2016) (disagreement with outcome of disciplinary hearing is not a due process violation); *Palafox v. Spiller*, 2018 WL 3037398, at *4 (S.D.Ill. June 19, 2018)(plaintiff believes Adjustment Committee "gave more weight to results of investigation…and to confidential informants than it did to Plaintiff's version of events. But mere disagreement with the outcome of a disciplinary hearing does not amount to a due process violation.").

Plaintiff also admits he was given the opportunity to speak and provide evidence during the hearing.  However, Plaintiff says the committee denied his request for a continuance.  Plaintiff wanted to review the video, prepare questions for the CS witnesses, and see the results of his own drug test.

The Defendants correctly note the results of Plaintiff's own drug test are irrelevant.  Plaintiff was not accused of using marijuana, but instead of bringing marijuana into the facility and providing it to other inmates.  In addition, Plaintiff was given a complete review of the evidence against him eight days before the hearing including a description of the video recording.

More important, "[p]rison disciplinary proceedings are not criminal proceedings, and do not require the same protections to the accused as criminal proceedings do." *Lehn v. Bryant*, 2006 WL 2095787, at *8 (C.D.Ill. July 27, 2006), *citing Wolff,* 418 U.S. at 556. In other words, "there is no right to 'confrontation and cross-examination.'" *Hamilton v. Scott*, 762 F.Supp. 794, 802 (N.D.Ill. March 29,1991), *quoting Wolff,* 418 U.S. at 567; *see also*

15

*Ferguson v. McCaughtry*, 1993 WL 3076, at *1 (7th Cir. 1993)("no right to confront or cross-examine his accuser"); *Jones v. Messina*, 2008 WL 192329, at *5 (C.D.Ill. Jan. 23, 2008)("confrontation and cross-examination and counsel are not constitutionally required.").

Plaintiff cannot demonstrate a protected liberty interest in his five- month segregation stay. In addition, the record establishes Plaintiff received advance written notice of the claimed rule violations, the opportunity to be heard by impartial decision makers, the opportunity to call witnesses and present evidence, and he was provided a written statement of the basis of the decision to impose disciplinary measures. Furthermore, various evidence corroborated the reliability of the statements from the confidential sources. The Defendants' Motion for Summary Judgment is granted. [58].

**IT IS THEREFORE ORDERED:**

1) Defendants Cameron Watson, David Frank, and Angela McKittrick's Motion for Summary Judgment is GRANTED pursuant to Federal Rule of Civil Procedure 56 [58]. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff. This case is terminated.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *See also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an

opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective).   If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

Entered this 30th day of January, 2023.


s/ James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE